MOSES GOLDSMITH & others *vs.* MARCKS MANHEIM.
MARCKS MANHEIM *vs.* MOSES GOLDSMITH & others.

Commission merchants, by order of the owner of cotton, sent it to their agent in England for sale, drew bills of exchange on him, payable in sixty days after sight, for the amount of the proceeds and of other sums due, and sold the bills. The bills were accepted, but not paid, and the drawers took them up. At the trial of an action by the owner of the cotton against the commission merchants for the proceeds of the sale, there was evidence of a usage in the trade to draw for the proceeds of sales by bills at sixty days' sight. *Held*, that whether the conduct of the commission merchants was a loan of their principal's money, or whether they acted in accordance with the usage of business, was a question for the jury; that it did not appear that the usage was unreasonable; and that if they acted in accordance with the usage they were not liable.

TWO ACTIONS OF CONTRACT. The first action was brought by Moses Goldsmith, Abraham A. Goldsmith and Samuel B. Locke, a firm doing business under the name of Goldsmith & Son, against Marcks Manheim, on an account annexed, to recover $1683, money advanced to the defendant; also the damages, costs and expenses on a bill of exchange, drawn May 13, 1870, protested, and, at the defendant's request, paid by the plaintiffs; and the defendant's proportional part of the damages, costs and expenses on another bill of exchange, drawn June 24, 1870, and paid, at his request, by the plaintiffs. The defendant was credited with

$500, the amount received from Bruce, Simpson & Company on a bill of exchange drawn April 6, 1870. Writ dated August 20, 1870.

The second action was brought by the defendant in the former action against the plaintiffs in that action, on an account annexed, to recover the net proceeds of the sale of thirty-one bales of cotton. The defendants in this action were credited with the amount of the advance, for which they brought the former action. Writ dated August 22, 1870.

The actions were tried together in the superior court,' before *Wilkinson,* J., and the following facts appeared :

Manheim, who was a resident of this state, sent thirty-one bales of cotton to Goldsmith & Son, who were forwarding and commission merchants at Charleston in South Carolina, and who in February 1870, by his order, shipped the cotton to Liverpool for sale, sending it to their agents and correspondents in that city, Bruce, Simpson & Company. In March, Goldsmith & Son advanced, through Locke, who was a partner of the firm, resident in Boston, $1683 to Manheim. In May, Manheim directed Goldsmith & Son to sell his cotton as soon as possible and send the proceeds to him through Locke, but gave no directions about the transmission of the funds from Liverpool to Charleston. Goldsmith & Son accordingly telegraphed to Bruce, Simpson & Company to sell, who sold immediately.

On April 6, Goldsmith & Son drew a bill of exchange for $500 on Bruce, Simpson & Company, payable sixty days after sight, to the order of Locke. It was by him indorsed and sold to a banking house, and was accepted and paid by the drawees at maturity, and the amount was credited by Goldsmith & Son to Manheim. On May 13, Goldsmith & Son drew another bill of exchange for $1485 on Bruce, Simpson & Company, payable sixty days after sight, to the order of Locke. It was by him indorsed and sold to a banking house, and was accepted on May 31, but on August 2, when it matured, Bruce, Simpson & Company suspended payment and the bill was protested and returned to Goldsmith & Son, who paid it with damages. This bill on its face was expressly drawn against the proceeds of Manheim's cotton, and the

two bills were drawn in order to reimburse Locke for the advances made to Manheim. On June 20, Goldsmith & Son received from Bruce, Simpson & Company the account of sales of the cotton, showing the net proceeds to be $2985.41, and sent the same to Manheim by a letter dated July 19 and received by him July 22 or 23. On June 24, Goldsmith & Son drew a bill of exchange for the balance of the proceeds of Manheim's cotton, together with sundry other balances of account between them and Bruce, Simpson & Company, payable sixty days after sight, to their own order, and indorsed and sold it to a banking house; this bill was accepted July 9, but, before the bill matured, Goldsmith & Son, hearing of the failure of the acceptors, ordered the bill home and paid it with damages to a less amount than if it had gone to protest. Whether Bruce, Simpson & Company actually received the price of the cotton did not appear, but in the account sent to Goldsmith & Son, above mentioned, they credited Goldsmith & Son with the amount received for it.

Manheim testified " that he had no notice of the drawing of any of the bills until he received the letter of July 19, which gave him notice of the drawing of the last bill only, and contained a statement that all European exchange was drawn on sixty days; and that he had no notice of the other bills until about the date of the writs; " and as to this no other evidence appeared. Goldsmith & Son introduced evidence tending to show that in drawing bills on Bruce, Simpson & Company, payable sixty days after sight, they followed the usage of the trade, and that all their acts in regard to the bills were in the usual course of business.

Manheim asked the judge to rule " that, by drawing the bills and putting them into circulation, Goldsmith & Son made themselves responsible to Manheim for the money, although the acceptors failed at the time of the protest of the second bill; and that such proceedings were equivalent to a loan of Manheim's money."

But the judge declined so to rule, and did rule " that it was a question of fact for the jury whether or not there had been any loan of Manheim's money; that a loan thereof would not be jus-

tifiable ; but that, if in the absence of an express agreement as to the transmission of the funds the bills were drawn and put in circulation according to the usual course of business in the trade, then such proceedings were no breach of duty on the part of Goldsmith & Son, acting as Manheim's agents, and did not make them responsible for the money lost by the failure of Bruce, Simpson & Company to pay the bills."

The jury returned verdicts for Goldsmith & Son in both cases. Manheim alleged exceptions.

*G. W. Park*, for Manheim. Whether the conduct of Goldsmith & Son amounted to a loan of Manheim's money was a question of law. Drawing the last two bills and selling them was an appropriation of Manheim's funds in the hands of Bruce, Simpson & Company to the use of Goldsmith & Son, and made the latter liable to Manheim. *Taber* v. *Perrot*, 2 Gallison, 565. *Amory* v. *Hamilton*, 17 Mass. 103. *Parsons* v. *Martin*, 11 Gray, 111. The amount of the advances was exceeded by the sum of the first and second bills. The acceptance of the bills substituted the obligations of the acceptors to third persons for their special custody of Manheim's money, which was not before liable to their general creditors. *Taylor* v. *Plumer*, 3 M. & S. 562. *Thompson* v. *Perkins*, 3 Mason, 232. These acceptances prevented Manheim's claiming his money from those who held it, and made Goldsmith & Son, who drew the bills, responsible to him. *Jackson* v. *Baker*, 1 Wash. C. C. 394. 1 Am. Lead. Cas. (5th ed.) 800. By drawing the bills on time, Manheim's money was lent to the acceptors, and by selling them Goldsmith & Son had the use of the money, and this appropriation made them liable. Story on Agency, §§ 200, 217 *c*, *& seq*. The evidence of usage did not show that it was the course of business for the money to be at the risk of the principal. *Vail* v. *Durant*, 7 Allen, 408. If it did show such a course of business, the usage is unreasonable. *Parsons* v. *Martin*, 11 Gray, 111. *Strong* v. *Bliss*, 6 Met. 393. *Whitney* v. *Esson*, 99 Mass. 308.

*C. Robinson, Jr.*, for Goldsmith & Son.

CHAPMAN, C. J. Manheim employed Goldsmith & Son, who were forwarding and commission merchants at Charleston, to

send his cotton to Liverpool, cause it to be sold there and have the avails transmitted to him, through Locke, their Boston partner, but without giving more specific instructions. He thus authorized them to transact the business in accordance with the ordinary usages of trade. Story on Agency, §§ 77, 86, 96. They drew three bills of exchange on Bruce, Simpson & Company, their agents at Liverpool, at sixty days after sight, for the avails, and the acceptors failed before the maturity of the second bill. Manheim asked the court to rule " that, by drawing these bills and putting them into circulation, Goldsmith & Son made themselves responsible to Manheim for the money, although the acceptors failed at the time of the protest of the second bill ; and that such proceedings were equivalent to a loan of Manheim's money." But the court declined so to rule, and did rule " that it was a question of fact for the jury whether or not there had been any loan of Manheim's money ; that a loan thereof would not be justifiable ; but that, if in the absence of an express agreement as to the transmission of the funds the bills were drawn and put in circulation according to the usual course of business in the trade, then such proceedings were no breach of duty on the part of Goldsmith & Son, acting as Manheim's agents, and did not make them responsible for the money lost by the failure of Bruce, Simpson & Company to pay the bills."

It is now contended that the question whether there was a loan of Manheim's money was a question of law, and could not properly be submitted to the jury. But there does not appear to have been a lending of the money, unless it consisted in some departure from the usual course of business in the trade. This was a question of fact, and was properly left to the jury. There was evidence on that point offered by Goldsmith & Son and not contradicted, and the finding of the jury is conclusive.

It is further said that if there was such usage it was unreasonable. But there is nothing in the facts of the case, as stated in the bill of exceptions, to support this position.

The last bill was drawn for the balance due for the cotton, together with some other balances due to Goldsmith & Son from Bruce, Simpson & Company. It is contended that this inter-

mingling of funds was an appropriation of the money of Manheim to Goldsmith & Son. But the fact was immaterial. Manheim would be entitled to no part of the money till the bill was paid, and if it had been paid there would have been no confusion of property. A certain sum would have been due to Manheim, but not due in specific money; and the amount could be easily ascertained. But the draft was not paid, and the amount of it did not contribute to cause the loss. It is sufficient that the usages of business were observed.                    *Exceptions overruled.*